IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| LINDA L. PRESSLEY, | ) | CIVIL ACTION 4:05-1456-TLW-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| JO ANNE B. BARNHART | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

     This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying plaintiff's claim for Disability Insurance Benefits ("DIB"). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

## I. PROCEDURAL HISTORY

     The plaintiff, Linda L. Pressley, filed applications for DIB on September 10, 2002, alleging inability to work since April 1, 2002, due to osteoarthritis in the right knee, a pinched nerve in the right arm, back and ankle pain, and asthma (Tr.51-53, 56). Her applications were denied at all administrative levels, and upon reconsideration (Tr. 27-33, 35-37). The Administrative Law Judge ("ALJ"), Richard L. Vogel, issued an unfavorable decision on November 26, 2004, finding plaintiff

was not disabled because she had the residual functional capacity to perform limited sedentary[1] work and could perform work existing in significant numbers in the regional or national economy (Tr. 10-25).   Claimant filed a Request for Review with the Appeals Council, and the Appeals Council denied plaintiff's request for review (Tr. 5-7), thereby making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

## II.  FACTUAL BACKGROUND

The plaintiff, Linda L. Pressley, was born May 25, 1959, (Tr. 51), and was 45 years old at the time of the ALJ's decision. (Tr. 51).  She has a high school education plus two years of college (Tr. 62). She worked in the vocationally relevant past as a kitchen assistant, sales associate with stocking responsibilities, and substitute teacher (Tr. 69).

## III.  DISABILITY ANALYSIS

The plaintiff's arguments consist of the following:

(1)     Did the ALJ improperly determine that the claimant was capable of meaningful employment since the claimant was limited to sedentary work capacity and required to use a cane when standing?

(2)     Did the ALJ improperly determine that the claimant was capable of meaningful employment since the claimant was limited to occasionally reaching with the dominant arm?

---

[1]"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R.§ 404.1567(a) 2005.

2

(3)    Did the ALJ improperly determine that the claimant was capable of meaningful employment despite the combination of ailments suffered by the claimant and the required medication taken by the claimant?

(4)    Did the ALJ improperly determine that the claimant was capable of meaningful employment since the claimant was limited in her ability to maintain pace and persistence required for employment?

(Plaintiff's brief).

In the decision of November 26, 2004, the ALJ found the following:

1.    The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.

2.    The claimant has not engaged in substantial activity since the date of disability.

3.    The claimant's osteoarthritis of the knees, asthma, obesity, and a pinched nerve in the right arm are considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(c).

4.    These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.    The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6.    The claimant has the residual functional capacity to perform a significant range of sedentary work activity. Specifically, the claimant can lift and carry no more than 10 pounds at a time and can occasionally lift and carry articles like docket files, ledgers, and small tools. The claimant is restricted to no climbing, crawling, balancing or stooping; no more than occasional fine manipulation with the dominant hand; no more than occasional overhead reaching with the dominant are; a sit/stand option at will; use of a cane while standing and

3

walking; no exposure to hazards; no concentrated exposure to lung irritants; no exposure to temperature extremes; and no operation of foot pedals.  She can sit for 6 hours in an 8-hour workday and stand for approximately two hours, using the sit/stand option at will.

7.    The claimant is unable to perform her past relevant work (20 CFR § 404.1565).

8.    The claimant is a "younger individual" (20 CFR § 404.1563).

9.    The claimant has "more than a high school education" (20 CFR § 404.1564).

10.    Transferability of skills is not an issue in this case (20 CFR § 404.1568).

11.    The claimant has the residual functional capacity to perform a significant range of sedentary work (20 CFR § 404.1567).

12.    Although the claimant's exertional limitations do not allow her to perform the full range of sedentary work, using Medical-Vocational Rule 201.21 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform.  Examples of such jobs include work as an information clerk and as an inspector/sorter.

13.    The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(g)).

(Tr. 23-24).

The Commissioner argues that the ALJ's decision was based on substantial evidence and that the phrase "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 390-401, (1971). Under the Social Security Act, 42 U.S.C. § 405 (g), the scope of review of the Commissioner's final decision is limited to:  (1) whether the decision of the Commissioner is supported by substantial

4

evidence and (2) whether the legal conclusions of the Commissioner are correct under controlling law.  Myers v. Califano, 611 F.2d 980, 982-83 (4th Cir. 1988); Richardson v. Califano, 574 F.2d 802 (4th Cir. 1978).  "Substantial evidence" is that evidence which a "reasonable mind might accept as adequate to support a conclusion."  Richardson, 402 U.S. at 390.  Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict.  Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).   The Court's scope of review is specific and narrow.   It does not conduct a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence.   42 U.S.C. § 405 (g) (1982); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established.  Five questions are to be asked sequentially during the course of a disability determination.  20 C.F.R. §§ 404.1520, 1520a (1988).  An ALJ must consider (1) whether the claimant is engaged in substantial gainful activity, (2) whether the claimant has a severe impairment, (3) whether the claimant has an impairment which equals a condition contained within the Social Security Administration's official listing of impairments (at 20 C.F.R. Pt. 404, Subpart P, App. 1), (4) whether the claimant has an impairment which prevents past relevant work and (5) whether the claimant's impairments prevent him from any substantial gainful employment.

Under 42 U.S.C. §§ 423 (d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months." See 20 C.F.R. § 404.1505(a); Blalock, 483 F.2d at 775.

If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1503(a). Hall v. Harris, 658 F.2d 260 (4th Cir. 1981). An ALJ's factual determinations must be upheld if supported by substantial evidence and proper legal standards were applied. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

A claimant is not disabled within the meaning of the Act if she can return to her past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82-62. The claimant bears the burden of establishing her inability to work within the meaning of the Social Security Act. 42 U.S.C. § 423 (d)(5). She must make a prima facie showing of disability by showing she was unable to return to her past relevant work. Grant v. Schweiker, 699 F. 2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to her past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy that the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. Id. at 191.

## IV.  MEDICAL REPORTS

The undersigned has reviewed the medical records and finds many of the reports relevant to the issues in this case.   The medical records as set out by the defendant have not been disputed by the plaintiff and plaintiff did not set out a summary of the medical records in her memorandum. Therefore, the undisputed medical evidence as stated by the defendant is set forth herein.

On April 19, 2001, one year prior to her alleged onset of disability date, plaintiff presented to Neena Singh, M.D., with complaints of right knee pain.  Examination of the right knee revealed no effusion, mild crepitus, mildly limited range of motion due to pain, intact neurovascular status, and mild tenderness along the medial side of the knee (Tr. 176).

On May 17, 2001, Dr. Singh referred plaintiff to an orthopedic surgeon (Tr. 173).

On May 29, 2001, plaintiff saw orthopedic surgeon Peter J. Spohn, M.D., for complaints of right knee pain.  At that time, Dr. Spohn noted mild patella crepitation with range of motion, but no ligament laxity or abnormal tracking of the patella.  X-rays of the right knee showed normal bony and soft tissue structure, and a subsequent MRI showed "very small joint effusion, but otherwise normal appearing knee." (Tr. 162).  Dr. Spohn diagnosed plaintiff with possible lateral joint compartment and osteoarthritis and recommended conservative treatment, including medication and physical therapy.  (Tr. 162-163). Subsequent treatment notes from Dr. Spohn dated July and August 2001, indicated that plaintiff got some pain relief after a cortisone injection (Tr. 161-163).

On March 7, 2002, one month prior to plaintiff's alleged onset of disability, she returned to Dr. Spohn complaining of right knee pain and swelling.  Examination of the right knee showed "marked" patella crepitation, a small efusion, pain to palpation, no ligament laxity, and a full range

7

of motion. Dr. Spohn diagnosed plaintiff with bilateral chondromalacia of the patella and scheduled right knee arthroscopy for April 1, 2002. (Tr. 160).

On April 1, 2002, plaintiff underwent a right knee arthroscopic abrasion chondroplasty[2] of the lateral femoral condyle and a right knee partial lateral meniscectomy[3] performed by Dr. Spohn (Tr. 109-111).

On April 18, 2002, two weeks after plaintiff's knee surgery, plaintiff returned to Dr. Spohn. Upon examination, plaintiff's right knee had a full range of motion with no ligament laxity. There was "mild" crepitation and popping associated with pain. Dr. Spohn prescribed Bextra and instructed plaintiff to continue using her crutches (Tr. 158-159).

On April 23, 2005, one week later, plaintiff called Dr. Spohn and requested permission to ride her stationary bike. Dr. Spohn granted plaintiff's request but instructed her to ride with no resistance (Tr. 158).

Treatment notes from Dr. Spohn dated May and June 2002, indicated that plaintiff complained of an inability to walk, and that her right knee continued to hurt. Examination of the right knee showed a well-healed incision; she had a full range of motion with no ligament laxity; pain to palpation over the lateral patella, lateral condyle, and lateral joint line; and pain with motion and valgus stress, but no obvious patella or meniscal signs (Tr. 158). Plaintiff also reported pain on palpation of the left knee. X-rays of the left knee showed "minor patella spurs." Dr. Spohn prescribed plaintiff a knee sleeve and more Bextra for pain relief. Treatment notes dated July through

---

[2]Chondroplasty is plastic or reparative surgery on cartilage. See Taber's Cyclopedic Medical Dictionary (Taber's) (20th ed.2005).

[3]Meniscectomy is the removal of the meniscus cartilage of the knee. See Taber's, supra at note 2.

8

September 2002, from Dr. Spohn indicated plaintiff was using a cane and a right knee brace. Examination showed "mild" crepitation with range of motion of the right knee, pain and crepitation, no pain with varus stress test, no ligament laxity, and no effusion (Tr. 157). Plaintiff was administered three synvisc injections in the right knee and prescribed Darvocet-N for pain (Tr. 155-157). On October 8, 2002, plaintiff stated that the synvisc injections did not help. Dr. Spohn administered plaintiff another cortisone injection and advised her to continue use of the knee sleeve and cane (Tr. 155).

On October 22, 2002, plaintiff complained of pain in the right leg when "wiggling it around at night." Dr. Spohn performed an examination of plaintiff's back, which revealed a normal range of motion of the thoracolumbar spine; pain to palpation at L5-S1, with no soft tissue spasms or masses noted and normal motor and sensory exams of the lower extremities. An x-ray of the lumbar spine showed "mild" anterior spurring at L3-S1. Dr. Spohn prescribed physical therapy and opined that plaintiff's knee discomfort could be coming from her back (Tr. 154).

On November 26, 2002, plaintiff underwent a vocational rehabilitation physical performed by David W. Moon, M.D., at the request of the State agency. Dr. Moon noted that plaintiff's main complaint was her asthma. Plaintiff reported that she was hospitalized once in 2000 for asthma and had no emergency room visits since then. Plaintiff reported that she could walk only 20 feet due to knee pain, right greater than left. She reported intermittent numbness and tingling in the right arm, but that she still had strength in the arm. She also reported that she last worked as a substitute teacher but quit because her mother became sick. Physical examination revealed poor air movement within the lung field with inspiratory and expiratory wheezes; no pedal edema; crepitance of both knees with some popping and cracking of the right knee; stable knee joints; intact cranial nerves II

9

through XII; normal motor and sensory examinations; and positive and symmetrical deep tendon reflexes. Dr. Moon noted that plaintiff squatted poorly because of knee pain, but came within one inch of touching her toes when bending over. Dr. Moon assessed plaintiff with asthma, bilateral knee pain, right greater than the left, and surgical removal of hydradenoma[4] from the right axiallary area with some nerve stimulation (Tr. 134-136).

An x-ray on November 26, 2002, of the knees showed no fractures or dislocations, decreased joint spaces-degenerative joint disease, and some "hypersclerotic" (hardening or induration) changes of the tibial plateau of the medial joint spaces of both knees (Tr. 137).

On December 31, 2002, plaintiff reported to Dr. Spohn that she now had swelling in both legs and hands. An examination showed full range of motion of the right knee with crepitation upon movement of the patella. Dr. Spohn diagnosed plaintiff with bilateral knee osteoarthritis and discussed the possibility of a total knee replacement in the future. He also prescribed more Bextra and Darvocet-N (Tr. 153-154).

On January 22, 2003, plaintiff underwent a spirometry test[5] which was normal (Tr. 142).

On February 7, 2003, Robert D. Kukla, M.D., a State agency medical consultant, reviewed plaintiff's record and completed a physical functional capacity assessment. Dr. Kukla found that plaintiff could occasionally lift and/or carry 10 pounds and frequently lift and/or carry less than 10 pounds, stand and/or walk (with normal breaks) for a total of at least two hours in an eight-hour workday. Dr. Kukla opined that plaintiff should not use foot pedals, climb ladders, ropes, or

---

[4]Hydradenoma is a tumor of a sweat gland. See Taber's supra at note 2.

[5]Spirometry test is the measurement of air entering and leaving the lungs. Merriam Webster's Medical Desk Dictionary (1996).

scaffolds, kneel, crouch, or crawl, but could occasionally climb ramps and stairs, and balance and stoop. Dr. Kukla noted no manipulative, visual, or communicative limitations, but opined that plaintiff should avoid concentrated exposures to fumes, odors, dust, gases, and poor ventilation (Tr. 143-150).

On February 10, 2003, plaintiff returned to Dr. Singh with complaints of chest and lower back pain. Dr. Singh noted that plaintiff had not been seen in a long time. Examination revealed no radiation of pain or paresthesias, but only tenderness in the mid-back. Dr. Singh prescribed Skelaxin and Bextra and recommended that she use heat and get a firm mattress (Tr. 169).

On August 15, 2003, plaintiff returned to Dr. Singh with disability papers to be filled out. She complained of low back, ankle, and right knee pain. Examination revealed that plaintiff weighed 251½ pounds, had a clear lung filed, and had no peripheral edema. Dr. Singh gave plaintiff prescriptions for Skelaxin and Motrin and advised her to have Dr. Spohn complete her disability papers (Tr. 168).

On October 29, 2003, plaintiff returned to Dr. Singh with complaints of right hip and leg pain. Plaintiff stated the pain was worse with walking but better at rest. Examination revealed no focal tenderness. (Tr. 167).

Plaintiff did not return to Dr. Singh until June 10, 2004. Plaintiff complained of a "knot" under her right arm. She reported that she had been out of her blood pressure medication for one month. Dr. Singh noted that plaintiff's blood pressure was elevated (160/98). Dr. Singh assessed plaintiff with hydradenitis[6] and recommended heat. (Tr. 164).

---

[6]Hydradenitis is inflammation of the sweat gland. See Taber's, supra at note 2.

On July 27, 2004, plaintiff presented to Morris E. Brown, III, M.D., with a history of degenerative joint disease, asthma and hypertension.  Plaintiff reported that she was currently doing well and had no other complaints.  Examination revealed clear lungs, crepitus in knees bilaterally, normal neurological and sensory examination, and normal deep tendon reflexes in the upper and lower extremities.  Dr. Brown assessed plaintiff with hypertension, asthma, and osteoarthritis (Tr. 192-194).

On August 30, 2004, plaintiff returned to Dr. Brown for follow-up on her blood pressure.  Plaintiff reported "hot flashes" and bilateral knee pain.  Examination was unremarkable, except for crepitus in the knees and he noted that her mood and affect were normal.  Dr. Brown encouraged plaintiff to exercise 30 to 45 minutes most days and to adjust her caloric intake (Tr. 190-191).

On September 21, 2004, plaintiff underwent a vocational rehabilitation evaluation performed by William Stewart, a certified rehabilitation counselor.  Plaintiff reported that she had to stop working in October or November of 1996 due to her medical and health condition.  She reported she was unable to get up and down, stand up straight, walk, or sit.  She reported that both knees throbbed, that her entire right arm would go numb, and that her right hip, right ankle, and back hurt.  She reported that she took Darvocet-N and over-the-counter pain analgesic for pain, and Flexeril for muscle spasms.  Mr. Steward noted that plaintiff exhibited a very flat affect and a depressed mood through the evaluation.  Mr. Stewart opined that, based on the evaluation, plaintiff suffered from depression and anxiety and needed to be referred for psychiatric evaluation and care.  Mr. Stewart opined that plaintiff's personal, social, and family activities have been permanently damaged because of plaintiff's medical/health conditions and limitations.  He further opined that plaintiff was not job

ready and had not been since October or November of 1996 and remained unable to work due to her medical/health conditions and limitations (Tr. 183-188).

## V. ARGUMENTS

Plaintiff argues that the ALJ improperly determined her residual functional capacity ("RFC"). Specifically, plaintiff asserts that in finding that she was limited to sedentary work capacity, the ALJ did not consider the fact that she uses a cane when standing, she was limited to occasionally reaching with her dominant arm, and that she was limited in her ability to maintain pace and persistence required for employment.

Plaintiff argues that the ALJ properly found that plaintiff requires a cane when standing. Plaintiff argues that this clearly limits the use of one of her hands and the use of her dominant hand is limited for purposes of reaching and fine manipulations. Plaintiff contends that most unskilled, sedentary jobs require good use of hands and fingers. Plaintiff states that the ALJ determined that she has a severe impairment of her right arm due to a pinched nerve. Plaintiff contends that since the ALJ found she could sit for six hours and stand for two hours in an eight-hour workday, she would be limited to attempting to use one hand during that two-hour period. Plaintiff argues that either the one arm available for work purposes is the dominate right arm limited to "minimal reaching" due to a pinched nerve or the left arm, which means the severely impaired right arm is grasping the cane. Plaintiff concludes that the sedentary occupational base would be significantly eroded because of her significant manipulative limitations.

The Commissioner responds that contrary to plaintiff's argument, the ALJ, giving plaintiff the benefit of the doubt, specifically considered plaintiff's need to use her cane and her limited use

of her right hand for overreaching and find manipulation to the extent that he incorporated both limitations into her RFC. (Tr. 20).

A review of the ALJ's decision reveals that he concluded the following in deciding plaintiff's RFC:

> . . . the undersigned finds the claimant has the residual functional capacity to perform a significant range of sedentary work activity. Specifically, the claimant can lift and carry no more than 10 pounds at a time and can occasionally lift and carry articles like docket files, ledgers, and small tools. The claimant is restricted to no climbing, crawling, balancing or stooping; no more than occasional find manipulation with the dominant hand; no more than occasional overhead reaching with the dominant arm; a sit/stand option at will; use of cane while standing and walking; no exposure to hazards; no concentrated exposure to lung irritants; no exposure to temperature extremes; and no operation of foot pedals. She can sit for 6 hours in an 8-hour workday and stand for approximately 2 hours, using the sit/stand option at will.

(Tr. 20).

Based on the ALJ's decision, he specifically states that he considered her osteoarthritis of the knees, asthma, obesity, and pinched nerve in the right arm to be severe impairments and placed limitations on her functional capacity by limiting the sedentary work as set out in the RFC.

At the hearing, the ALJ gave the following hypothetical to the vocational expert ("VE"):

> . . . please assume a hypothetical woman the same age as the claimant with the same work and educational background retaining the exertional capacity for sedentary work only with the following additional limitations; no climbing, crawling, balancing or stooping, no more than occasional find manipulation with the dominant hand and no more than occasional overhead reaching with the dominant arm, a sit-stand option at will, the flexibility to use a cane while walking and standing, no exposure to hazards, no concentrated exposure to lung irritants, no operation of foot pedals, and finally, no exposure to temperature extremes. Now, in your opinion, could such an individual work on a full-time basis at unskilled, sedentary work and, if so, at what please?

(Tr. 225-226).

14

The VE responded that plaintiff could perform work as an information clerk and an inspector/sorter. (Tr. 226). The ALJ then asked the VE if his descriptions were consistent with the DOT except for the sit-stand option of which he had professional knowledge about. The VE responded, "Yes, sir." (Tr. 226). Subsequently, the ALJ even questioned the VE as to how she was interpreting the limitation of fine manipulation. The VE testified that, from a vocational perspective, fine manipulation meant having to use the tips of your fingers like to pick up a pill. (Tr. 229).

The undersigned concludes that there is substantial evidence to support the ALJ's decision. In determining the RFC, the ALJ took into consideration all of plaintiff's severe impairments. In his decision, the ALJ stated that he considered plaintiff's osteoarthritis of the knees to be a severe impairment. He noted that following the arthroscopic knee surgery on April 1, 2002, plaintiff continued to complain of knee pain. However, on May 21, 2002, the ALJ noted that her examination revealed normal range of motion of the right knee and on June 25, 2002, there were no obvious patella or meniscal signs. Further, the ALJ gave weight to the objective x-ray of the left knee which revealed minor patella spurs and normal bony and soft tissue structures. On October 22, 2002, the ALJ noted that there was 5+/5+ strength in all major and lower extremity groups and on July 27, 2002, the plaintiff noted that she was doing well despite having crepitus in the knees. However, the ALJ stated that he was still limiting plaintiff to sedentary work activity with no climbing, crawling, balancing or stooping; no operation of foot pedals; a sit/stand option at will; use of a cane while standing and walking; and no exposure to hazards in consideration of her osteoarthritis of the knees. The ALJ also stated that he considered her asthma a severe impairment, giving her the benefit of the doubt. The ALJ noted that she had received little treatment for this condition and had not been hospitalized or been to the emergency room for asthma since June 2000. On January 22, 2003,

spirometry testing was normal and on February 10, 2003, and June 10, 2004, plaintiff's lungs were clear to auscultation. The ALJ stated that "nevertheless, limiting the claimant to no concentrated exposure to lung irritants and no exposure to temperature extremes accommodates the claimant's asthma." (Tr. 21). The ALJ also considered plaintiff's obesity finding that her "weight puts an added stress on her knees." (Tr. 21). Thus, the ALJ stated that he was finding that plaintiff was "limited to no climbing, crawling, balancing or stooping; a sit/stand option at will; use of a cane with standing and walking; and no exposures to hazards in consideration of her obesity." (Tr. 21). As to plaintiff's pinched nerve, the ALJ stated that he considered it to be a severe impairment, giving her the benefit of the doubt. The ALJ stated in his decision that October 18, 2002, she stated that she could still use her arm even though it was weak and she did not have good grip strength. The ALJ also noted that sensory and motor examination was normal throughout the upper extremities but he was still limiting her to no more that occasional fine manipulation of the dominant hand and no more than minimal overhead reaching with the dominant arm to accommodate her pinched nerve in the right arm. The ALJ thoroughly discussed his findings and the basis for them. The ALJ considered plaintiff's pinched nerve, obesity, osteoarthritis of the knees, asthma, and use of a cane. It is also noted that none of the treating physicians placed any restrictions or limitations on her activities other than not to use resistance on her stationary bike two weeks after her knee surgery.

Based on the record, there is substantial evidence to support the ALJ's finding as to plaintiff's RFC.

Next, plaintiff argues that the ALJ improperly considered the combinations of her impairments, from her right knee surgery, decreased joint space in both knees and some hyperclarotic changes of tibial plateau of joint spaces of both knees, asthma, pinched nerve in her  right upper

16

extremity resulting in periodic numbness, the required use of a cane for standing, and the required pain medication (Darvocet) which show she is unable to perform meaningful work. Plaintiff contends that the combined effects of these multiple ailments and medications were not discussed at all by the ALJ.

Defendant argues that the ALJ's decision reflects that he evaluated plaintiff as a whole person, by considering evidence of pain, asthma, obesity, right arm impairment, knee problems, and the need to use a cane and alternate between sitting and standing.

In evaluating a claim for disability insurance benefits, the Commissioner is required to consider the combined effects of a claimant's impairments, and she must adequately explain her evaluation of the combined effects of those impairments. Walker v. Bowen, 889 F.2d 47 (4th Cir. 1989); Reichenbacher v. Heckler, 808 F.2d 309, 312 (4th Cir. 1985). These factors are mandated by Congress' requirement that the Commissioner consider the combined effect of an individual's impairments, 42 U.S.C. § 423 (d)(2)(c) (1982), and a general requirement by the courts that an ALJ explicitly indicate the weight given to all relevant evidence. Murphy v. Bowen, 810 F.2d 433, 437 (4th Cir. 1987).

In addition, the Secretary is required to analyze two issues. He must first consider the combined effects of a claimant's impairments, and then he must adequately explain his evaluation of the combined effect of those impairments. Hines v. Bowen, 872 F.2d 56 (4th Cir. 1989), and Reichenbacher v. Heckler, 808 F.2d 309, 312 (4th Cir. 1985). These factors are mandated by Congress' requirement that the Secretary consider the combined effect of an individual's impairments, 42 U.S.C. § 423(d)(2)(c) (1982), and general requirement by the courts that an ALJ explicitly indicate the weight given to all relevant evidence, Murphy v. Bowen, 810 F.2d 433, 437

(4th Cir. 1987). See also, Hines, supra. In the Hines case, the plaintiff was within a few pounds of meeting the listing for disability due to obesity. Yet the ALJ found that despite her obesity and several other impairments, she was not disabled. Without specifically finding disability, the Fourth Circuit Court of Appeals remanded the case because the ALJ had failed to "explicitly indicate" the weight given to the evidence in the case, and the combination of the plaintiff's impairments.

As stated above, the ALJ took into account each of plaintiff's impairments including her knees, obesity, asthma, and pinched nerve in the right arm finding each to be severe but did not find them severe enough, either alone or in combination, to meet one of the listed impairments. In reviewing the decision, it reveals that the ALJ even discussed why he found she did not meet Listing 1.02 due to her osteoarthritis in her knees. The ALJ concluded that while she has limited use of her right knee, it does not seriously interfere with her ability to independently, initiate, sustain, or complete activities and examinations have consistently revealed normal range of motion of the right knee. The ALJ also considered whether or not her asthma meets Listing 3.00 but concluded that examinations have consistently shown her lungs to be clear to ausculation and percussion and the spirometry test on January 22, 2003 was normal. The ALJ also considered Listing 12.04 for depression and Listing 4.00 due to her high blood pressure but concluded that the record fails to support either one. (Tr. 19-20).

The undersigned concludes that the ALJ considered the impairments both individually and in combination in concluding that she did not meet a Listing. Based on the hearing decision and the ALJ's thorough discussion of all of the medical evidence, it is discernible that the ALJ considered the physical and mental evidence, the medical record and the level of the plaintiff's activity, to

18

indicate that the combination of the plaintiff's impairments did not indicate that the plaintiff was totally disabled from all work activity.

Lastly, plaintiff argues that the ALJ improperly rejected the vocational opinion of Dr. Stewart who concluded from his consultative analysis that plaintiff was limited in her ability to maintain pace and persistence required for employment. Plaintiff contends that Dr. Stewart concluded that plaintiff was suffering from significant psychological problems, depression and anxiety, and needs to be referred for psychiatric evaluation. Further, plaintiff asserts that Dr. Stewart noted she scored below the 2nd percentile in the Penn Bi Manual Dexterity Workshop which he states is reflective of very slow work speed and pace. (Tr. 186). He concluded that plaintiff was not employable.

Defendant contends that the ALJ was entitled to reject Dr. Stewart's conclusions in that he is a vocational counselor and not an acceptable medical source. Nonetheless, defendant asserts that the ALJ considered Dr. Stewart's opinion but properly determined that other substantial evidence did not support his opinion that plaintiff was disabled.

A review of the ALJ's decision reveals that he considered Dr. Stewart's opinion and gave reasons for discounting it. Specifically, the ALJ stated as follows:

> The undersigned does not accord significant weight to the opinion of Dr. Stewart. The determination of whether an individual is disabled is expressly reserved to the Commissioner pursuant to Section 20 CFR §404.1527. Statements that a claimant is disabled are not given any special significant [deference] on the issue of disability. Furthermore, the undersigned notes that Dr. Stewart is a certified Rehabilitation Counselor and is not a licensed medical doctor. As well, the undersigned notes that the weight of the medical evidence fails to support such a restrictive residual functional capacity. Dr. Stewart only examined the claimant on one occasion and did not have the benefit of a longitudinal relationship with the claimant. It appears that Dr. Stewart relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported. The objective medical evidence as a whole, simply

19

does not support Dr. Stewart's opinion. Therefore, his opinion is accorded minimal weight.

(Tr. 18).

This court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence, Richardson, 402 U.S. at 390. Even where the plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision, Blalock, 483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this court cannot reverse that decision merely because the evidence would permit a different conclusion. Shively v. Heckler, 739 F.2d at 989.

The undersigned finds there is substantial evidence in the medical record to support the ALJ's decision in the amount of weight he placed on the evidence of the plaintiff's consultative vocational analyst, Dr. Stewart. The ALJ noted that he is not a medical source entitled to significant deference. None of the treating physicians restricted or limited plaintiff in her activities or stated that she was disabled from employment. Additionally, the ALJ did not find plaintiff's testimony fully credible and he found that Dr. Stewart's opinion was based primarily on plaintiff's subjective complaints.

In assessing complaints of pain, the ALJ must (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d 585 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). A claimant's allegations of pain itself or its severity need not

20

be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges she suffers.  A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence.  20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

The ALJ cited numerous reasons for finding that plaintiff's credibility was not without question.  For instance, the ALJ concluded that:

> The undersigned finds that the claimant's testimony is not fully credible. While the claimant reported that she was extremely limited functionally, the claimant's physicians have not restricted her from any activity greater than those found by the Administrative Law Judge.

> Furthermore, the claimant has described activities that included doing simple household chores, such as light dusting, laundry, dishes, and grocery shopping. Her hobbies included sewing, refinishing furniture, and crafts. She also reported that she goes out with friends and relatives about one time a week. These activities are inconsistent with her complaints of severe limitations. Lastly, the claimant has not required any significant treatment or hospitalization for her conditions, except for a knee athroscopy in April of 2002.

(Tr. 18).

The court has addressed the issue and standard of pain as follows:

> 'An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability. . . . there must be medical signs and findings, established by medically acceptable, clinical or laboratory techniques, which show the existence of a medical impairment . . . which could reasonably be expected to produce the pain or other symptoms alleged and which . . . would lead to a conclusion that the individual is under a disability.'

Foster v. Heckler, 780 F.2d. 1125, 1128-29, (4th Cir. 1986), quoting from the Social Security Reform Act of 1984.  See also, SSR 90-1p and Hyatt v. Heckler, 807 F.2d 379 (4th Cir. 1986).

As previously stated, there is substantial evidence to support the ALJ's decision as to plaintiff's allegations of pain and the determination of her credibility based on the medical records discussed. Throughout the medical records, it is revealed that plaintiff had normal range of motion in her knee and her lungs were clear. There were also some inconsistencies in plaintiff's statements such as telling Dr. Moon that her main problem was asthma and testifying at the hearing that her main problems were her knees. (Tr. 134, 221).  Further, as the ALJ noted, plaintiff has not required any hospitalization or significant treatment for her knees since April 2002. The ALJ's evaluation of plaintiff's subjective complaints complies with the Fourth Circuit precedent and the Commissioner's regulations. The ALJ adequately addressed each complaint, as discussed, and explained his evaluation. Contrary to plaintiff's argument, the ALJ did consider plaintiff's daily activities but in conjunction with the other evidence of record. Therefore, the undersigned concludes that there is substantial evidence to support the ALJ's determination as to plaintiff's complaints of pain and her credibility based on the objective medical evidence. While the plaintiff may have limitations, there is substantial evidence to support the ALJ's decision that they are not so severe as to preclude her from the demands of all work.

The ALJ relied on the testimony of the VE at the hearing. The purpose of a vocational expert's testimony is to assist the ALJ in determining whether jobs exist in the economy which a particular claimant could perform.  Walker v. Bowen, 889 F.2d 47 (4th Cir. 1989).  The ALJ found that the plaintiff has the residual functional capacity to perform a significant range of sedentary work. (Tr. 24). Therefore, the burden shifted to the Commissioner to show other work existed in significant

22

numbers in the national economy that she could perform. The Commissioner met this burden through the testimony of Sondra S. Henry, a vocational expert ("VE"). The ALJ presented a hypothetical to the VE based on an individual of claimant's age, work experience, and education. In addition, she was asked to assume that this person was capable of retaining the exertional capacity for sedentary work only with the following additional limitations; no climbing, crawling, balancing or stooping, no more than occasional find manipulation with the dominant hand and no more than occasional overhead reaching with the dominant arm, a sit-stand option at will, the flexibility to use a cane while walking and standing, no exposure to hazards, no concentrated exposure to lung irritants, no operation of foot pedals, and finally, no exposure to temperature extremes. The vocational expert testified that given these characteristics this person could perform jobs in significant numbers in the economy.

The ALJ is required to set out the claimant's physical and mental impairments. The ALJ need not treat every allegation of impairment by claimant as fact; the ALJ is entitled and required to make factual determinations on disputed conditions. In this case, the ALJ found claimant's claim of total disability not entirely credible. The ALJ posed a hypothetical to the expert based on those allegations of impairment which the ALJ concluded were credible and supported by evidence in the record. Based on the testimony of the vocational expert, the ALJ held there were relevant jobs in the national economy, in significant number, which the plaintiff could perform. Therefore, the ALJ properly relied on the VE's testimony in finding that the plaintiff was not disabled because she could perform jobs that existed in significant numbers (Tr. 21). Lee v. Sullivan, 945 F.2d 687, 693-694 (4th Cir. 1991). Accordingly, the undersigned finds substantial evidence to support the ALJ's decision.

23

## VI.  CONCLUSION

Based upon the foregoing, this court concludes that the ALJ's findings are supported by substantial evidence and recommends the decision of the Commissioner be affirmed. Therefore, it is

RECOMMENDED that the Commissioner's decision be AFFIRMED.

Respectfully submitted,

s/Thomas E. Rogers, III

Thomas E. Rogers, III
United States Magistrate Judge

August 11, 2006
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**

24

## Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"

### &

### The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of service. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See* Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410, 1993 U.S.Dist. LEXIS® 3411 (D.S.C. 1993).

During the ten-day period for filing objections, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. *See* Keeler v. Pea, 782 F. Supp. 42, 43-44, 1992 U.S.Dist. LEXIS® 8250 (D.S.C. 1992); and Oliverson v. West Valley City, 875 F. Supp. 1465, 1467, 1995 U.S.Dist. LEXIS® 776 (D.Utah 1995). Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. *See* United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509, 1991 U.S.App. LEXIS® 8487 (6th Cir. 1991). *See also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

*See also* Branch v. Martin, 886 F.2d 1043, 1046, 1989 U.S.App. LEXIS® 15,084 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the plaintiff of the consequences of a failure to file specific, written objections. *See* Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16, 1989 U.S.App. LEXIS® 19,302 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

Larry W. Propes, Clerk
United States District Court
Post Office Box 2317
Florence, South Carolina 29503

25